**UNITED STATES**

v.

**Thomas N. CREAM, Aviation Storekeeper First Class (E–6), U.S. Navy.**

**NMCM 200200962.**

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 18 Oct. 2001.

Decided 29 May 2003.

LT Colin A. Kisor, JAGC, USNR, Appellate Defense Counsel.

LT Lars C. Johnson, JAGC, USNR, Appellate Government Counsel.

Before OLIVER, Chief Judge, VILLEMEZ, and HARRIS, Appellate Military Judges.

HARRIS, Judge:

Appellant was tried on 18 October 2001 by a general court-martial composed of a military judge alone. Pursuant to his pleas, Appellant was convicted of: (1) on divers occasions, violating a lawful general regulation, to wit: Department of Defense Joint Ethics Regulation (JER) by wrongfully putting a Federal government communications system to a use that would reflect adversely on the Department of Defense or a component thereof, to wit: viewing and storing pornographic images; (2) on divers occasions, knowingly receiving child pornography that had been transported in interstate or foreign commerce; and, (3) on divers occasions, knowingly possessing a computer hard drive containing numerous images of child pornography, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934.

Appellant was sentenced to confinement for a period of 18 months, reduction to pay grade E–1, forfeiture of all pay and allowances, and a bad-conduct discharge. On 31 January 2002, the convening authority (CA) approved only so much of the sentence as provides for reduction to pay grade E–1, confinement for 12 months,[1] forfeiture of all pay and allowances, and a bad-conduct discharge. Pursuant to a pretrial agreement, the CA suspended forfeitures of all pay and allowances for 6 months from the date of his action.

After carefully considering the record of trial, Appellant's two assignments of error, and the Government's response, we conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of Appellant was committed. *See* Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## Statement of Facts

All charges related to Appellant's violation of the JER, Department of Defense Regulation 5500.7–R, section 2–301, and Title 18 U.S.C. § 2252A, occurred onboard U.S. Naval Station, Rota, Spain. *See* Appendices A and B. At trial, Appellant moved, pursuant to RULE FOR COURTS-MARTIAL 907(b)(1)(A), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), to dismiss Charge II, and both specifications thereunder, for lack of jurisdiction. *See* Appellate Exhibit III. Though the military judge denied the motion, he noted that the issue, at least as to Specification 1 of Charge II, was preserved for appeal. Record at 85.[2] On 16 April 2002, the Supreme Court decided *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), striking down portions of Title 18 U.S.C. § 2256, thereby restricting the definition of child pornography in Title 18 U.S.C. § 2252A.

## Extraterritorial Applicability of Title 18 U.S.C. § 2252A(a)(2)

In his first assignment of error, Appellant asserts that the military judge erred in denying his motion to dismiss Specification 1 of Charge II for lack of extraterritorial applicability of Title 18 U.S.C. § 2252A(a)(2). Appellant avers that this Court should dismiss Specification 1 of Charge II and reassess the sentence. We disagree.

In order to be properly constituted, a court-martial must have jurisdiction over the accused and the offense being tried. R.C.M. 201(b)(4) and (5). While an accused may move to dismiss a charge at trial for lack of jurisdiction, jurisdictional issues are never forfeited. R.C.M. 907(b)(1); *see generally United States v. Reid*, 46 M.J. 236, 240

1. Pursuant to a pretrial agreement, the CA was only required to suspend confinement in excess of 12 months for a period of 12 months from the date of trial.

2. In his essential findings on the motion, the military judge stated "I specifically note that the [d]efense withdrew its Motion for Appropriate Relief to Dismiss Specification 2 of Charge II. Accordingly, any reference to this motion was disregarded (see [d]efense's Motion to Dismiss Proposed Findings of Fact and Conclusions of Law [at] 3)." Appellate Exhibit VI at 4. The record does not disclose that the trial defense counsel ever withdrew any portion of the motion, and trial defense counsel argued it. Record at 24. The military judge denied both parts of the motion. Record at 32. Appellant, however, does not challenge his conviction under Specification 2 of Charge II for lack of jurisdiction.

(1997). At trial, the Government bears the burden of demonstrating proper jurisdiction. R.C.M. 905(c)(2)(B). Where the issue was raised below, the judge's findings of fact will be overturned only if clearly erroneous; his conclusions of law are reviewed *de novo*. *United States v. Lepresti*, 52 M.J. 644, 649 (N.M.Ct.Crim.App.1999).

Appellant claims the military judge erred when he denied Appellant's motion to dismiss for lack of jurisdiction. Appellant's Brief of 27 Jun 2002 at 3. Specifically, Appellant asserts that his conviction under Title 18 U.S.C. § 2252A, the Child Pornography Protection Act (CPPA), was improper in that the CPPA is not applicable to conduct committed outside the United States.[3] *Id.* at 7. However, Appellant's reading of the CPPA somewhat disregards the extended reach of the UCMJ's status-based jurisdictional scheme, directly conflicts with the jurisdictional parameters set forth in the Federal criminal code, and fails to adequately appreciate the intent of Congress in passing the subject statute.

First, Appellant fails to properly recognize the unlimited geographical reach of the UCMJ, as applied to active duty service members. Appellant was charged under Article 134, UCMJ, which charge incorporated the CPPA. Charge Sheet. Crimes and non-capital offenses, as defined by Federal statutes, may be properly tried as offenses under clause (3) of Article 134, UCMJ. Second, Appellant incorrectly asserts that Charge II, Specification 1 (receipt of child pornography), represents an "extraterritorial application" of Federal law. In making his claim, Appellant invokes the judicial presumption "that [F]ederal statutes are presumed to apply only within the territorial limits of the United States absent Congressional intent indicating otherwise." Appellant's Brief of 27 Jun 2002 at 4. While it is true that courts presume "that legislation of Congress, unless a contrary intent appears, is meant to apply only within the *territorial jurisdiction of the United States*," *Foley Bros., Inc. v. Filardo*, 336 U.S. 281, 285, 69 S.Ct. 575, 93 L.Ed. 680

(1949)(emphasis added), the Government clearly established that Appellant's conduct did not occur beyond this territorial reach. In fact, the Federal code, under which Appellant was convicted, defines Federal territory as "[a]ny lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof." Title 18 U.S.C. § 7(3). The U.S. Naval Station at Rota, Spain, on which Appellant committed his offenses, squarely falls under this broad definition. Thus, a plain reading of the pertinent statutory language undermines Appellant's claim. *See United States v. Desha*, 23 M.J. 66, 68 (C.M.A.1986)("If the statutory language is unambiguous, in the absence of 'a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive.' ").

This reading of Federal territorial jurisdiction was adopted in a recent Federal court of appeals decision addressing the same issue. In *United States v. Corey*, a panel of the Ninth Circuit Court of Appeals considered whether a United States citizen, living abroad with his family while working on a U.S. Air Force base in Yokota, Japan, could be charged under Title 18 U.S.C. §§ 2241(a) and 2242(1), for sexually abusing his 15–year–old stepdaughter. 232 F.3d 1166, 1169 (9th Cir.2000). In determining that the Federal statute applied to conduct committed by a civilian on a military base abroad, the Court rejected the appellant's reliance on the presumption against extraterritorial application. *Id.* at 1171. The Court concluded that "[l]and subject to subsection 7(3) is not 'extraterritorial' as the Supreme Court has defined the term." *Id.* In effect, the Court recognized that the presumption against extraterritorial application only applies when the conduct at issue occurs beyond the territorial jurisdiction of the United States as defined by Title 18 U.S.C. § 7.

A similarly broad notion of Federal criminal jurisdiction has been adopted by other courts addressing related issues. *See, e.g., United States v. Erdos*, 474 F.2d 157, 160 (4th Cir.1973) (holding that subsection 7(3)

---

**3.** Notwithstanding this present claim, Appellant expressly agreed in the stipulation of fact offered at trial that the pertinent statute was operative

and applicable to his conduct by virtue of Article 134, UCMJ. Prosecution Exhibit 1 at 2.

grants territorial authority over the American embassy in Equatorial Guinea); *see also EEOC v. Arabian American Oil Co. (Aramco)*, 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) (defining U.S. territory as "places over which the United States has sovereignty or has *some measure of legislative control.*") (emphasis added); *see also Haitian Ctrs. Council, Inc. v. McNary*, 969 F.2d 1326, 1342 (2d Cir.1992)(noting that section 7 would permit U.S. criminal jurisdiction over the commission of crimes at Guantanamo Bay).

Only one court has reached a result in direct conflict with *Corey*. In *United States v. Gatlin*, a panel of the Second Circuit Court of Appeals considered whether a U.S. citizen could be tried under Title 18 U.S.C. § 2243(a) for sexually abusing a 13–year–old girl in a housing complex located onboard a U.S. Army base in Germany. 216 F.3d 207, 208 (2d Cir.2000). After noting that the statute in question did not apply to conduct committed outside the "territorial jurisdiction of the United States," the *Gatlin* Court concluded that the trial court did not have jurisdiction to try the appellant for the offenses charged. *Id.* at 220. The *Gatlin* Court relied heavily on the presumption against extraterritorial application articulated in *Foley. Id.* at 211.

The *Gatlin* Court applied the identified presumption to a jurisdictional statute, Title 18 U.S.C. § 7, as opposed to a substantive Federal law. The canon of statutory construction articulated in *Foley* was clearly meant to apply only to substantive statutory provisions. *See Foley Bros., Inc.*, 336 U.S. at 285, 69 S.Ct. 575 (considering whether Congress intended to apply Federal law restricting the length of a work day to work performed in foreign countries); *see also United States v. Bin Laden*, 92 F.Supp.2d 189, 206 (S.D.N.Y.2000)(noting that the presumption against extraterritorial application only applies to statutory provisions that define offenses). In addition, the *Gatlin* Court applied a presumption to defeat the plain meaning of the language contained in subsection 7(3) providing for a broad concept of "territory" under the Federal criminal code. As noted in *Foley,* the presumption against

extraterritorial application applies only in the absence of a clear intent to the contrary. 336 U.S. at 285, 69 S.Ct. 575; *see also United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)("In determining the scope of a statute, we look first to its language.").

Even if Appellant's conviction involved an "extraterritorial application" of Federal law, such application was not in contravention of legislative intent or otherwise impermissible. It is now well-settled that Congress has the authority to enforce laws that apply beyond the borders of the United States. *See Aramco*, 499 U.S. at 248, 111 S.Ct. 1227 (stating that "Congress has the authority to enforce its laws beyond the territorial boundaries of the United States."); *see also United States v. Vasquez–Velasco*, 15 F.3d 833, 839 (9th Cir.1994)(noting that "[g]enerally there is no constitutional bar to the extraterritorial application of United States penal laws."). While it is true courts presume legislation is not meant to have extraterritorial application, this presumption is merely a canon of statutory construction that can be, and often is, rebutted. Courts have deemed this presumption overcome where the exercise of extraterritorial power can be "inferred from the nature of the offenses and Congress' other legislative efforts to eliminate the type of crime involved." *United States v. Thomas*, 893 F.2d 1066, 1068 (9th Cir.1990)(quoting *United States v. Baker*, 609 F.2d 134, 136 (5th Cir.1980)). The ultimate question remains whether there are sufficient indicia of congressional intent to apply the CPPA extraterritorially.

Here, both the nature of the offense and Congress' other legislative efforts in this area, confirm the CPPA was intended to have broad application. The transmission (and subsequent receipt) of child pornography over the Internet is conduct that is rarely constrained by geographical borders. As such, targeting "extraterritorial" conduct of this nature makes sense. *See Corey*, 232 F.3d at 1170 (stating "the presumption does not apply where the legislation implicates concerns that are not inherently domestic."). As noted in the committee report on Senate Bill 1237 (the bill that was ultimately passed

into law as the CPPA), the concern of Congress in passing this legislation, among others, was that the "child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography." S.Rep. No. 104–358 at 17, 104th Congress, 2d Session, August 27, 1996 (citing *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982))(internal quotation marks omitted). The victimization of children that stems from the dissemination of these images is all the more significant when such images are sent electronically beyond our borders. Limiting the reach of the CPPA as suggested by Appellant would greatly undermine the goal of protecting those exploited in the child pornography market. This Court should not and will not construe the CPPA in a manner that will "greatly ... curtail the scope and usefulness of the statute." *United States v. Wright–Barker*, 784 F.2d 161, 167 (3d Cir.1986)(citing *United States v. Bowman*, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149 (1922)); *see also United States v. Kolly*, 48 M.J. 795, 797 (N.M.Ct.Crim.App.1998)(declining to limit the reach of a related child pornography statute in a manner that would undermine the effectiveness of the statute (Title 18 U.S.C. § 2252)).

The comprehensive effort of Congress in recent years to eradicate child pornography further suggests that the CPPA was intended to have a broad jurisdictional reach. Beginning with the Protection of Children Against Sexual Exploitation Act of 1977, Title 18 U.S.C. § 2252, Congress has acted boldly and repeatedly to eliminate the production, possession, and distribution of sexually explicit images of children. *See* Child Protection Act of 1984, Pub.L. No. 98–292, § 4, 98 Stat. 204, 204 (1984); Child Protection and Obscenity Enforcement Act of 1988, Pub.L. No. 100–690, § 7511(b), 102 Stat. 4485, 4485 (1998)(codified as amended in scattered sections of Title 18 U.S.C.); Child Protection Restoration and Penalties Enhancement Act of 1990, Pub.L. No. 101–647, § 323(a), (b), 104 Stat. 4816, 4818 (1990); Protection of Children Against Sexual Predators Act of 1998, Pub.L. No. 105–314, §§ 202–203, 112 Stat. 2974, 2977–78 (1999).

In each case, Congress sought to strengthen and expand the scope of criminal jurisdiction over conduct involving child pornography. As a part of this comprehensive legislative scheme designed to aggressively ferret out and punish this type of misconduct, it is clear that Congress intended the CPPA to have the most expanded application permissible within the parameters of congressional authority.

The text of the CPPA itself suggests that Congress sought to address conduct beyond the geographical borders of the United States. In the pertinent subsection, Congress specifically targeted pornography that has traveled in "foreign commerce," suggesting that Congress was not solely concerned with the domestic exchange of child pornography. *See* Title 18 U.S.C. § 2252A(a)(2).

While Appellant cites *Aramco* for the proposition that boilerplate language referencing "commerce" is not enough to overcome the presumption against extraterritorial application, Appellant's Brief of 27 Jun 2002 at 4, Appellant fails to also note the significant distinctions between the statute at issue in *Aramco* and the CPPA. In *Aramco*, the Court considered language referencing "commerce" in a Federal civil rights statute that was clearly designed to invoke Congress' authority under the Commerce Clause of the United States Constitution. *See Aramco*, 499 U.S. at 251, 111 S.Ct. 1227. The reference to "commerce" in the CPPA, on the other hand, serves to define the type of child pornography subject to criminal sanctions; those materials that have traveled in foreign or interstate commerce. Title 18 U.S.C. § 2252A(a)(2). In other words, the reference to "commerce" is not a recitation of Congressional authority, but rather, a description of the material prohibited under the statute.

Furthermore, the pertinent Congressional Record contains numerous comments by legislators suggesting a desire to enforce the statute's provisions wherever necessary and appropriate. In the Senate committee report on the original bill, Senator Grassley lamented that "[t]he history of efforts to eliminate the scourge of child pornography is replete with examples of child pornographers finding

ways around legislation intended to eliminate child pornography." S.Rep. No. 104–358 at 28, 104th Congress, 2d Session, August 27, 1996 (Additional Views). The committee report on H.R. 3494 (which amended the CPPA) characterized the legislation as "a comprehensive response to the horrifying menace of sex crimes against children," which seeks to provide "law enforcement with the tools it needs to investigate and bring to justice those individuals who prey on our nation's children." H.R.Rep. No. 105–557 at 13, 105th Congress, 2d Session, June 3, 1998, U.S.Code Cong. & Admin.News 1998, pp. 678, 681–82 (Purpose and Summary). After that bill passed in the Senate, Senator Leahy remarked that "[c]oncerns over protecting our children have only intensified in recent years with the growing popularity of the Internet and the World Wide Web," noting that "[c]yberspace ... connects people from around the world." Cong. Rec. S 12257, 105th Congress, 2nd Session, October 9, 1998. Thus, in passing the CPPA and its amendments, Congress clearly recognized the need for broad jurisdictional application. Accordingly, we hold that Appellant cannot escape prosecution under this particular statute merely because he was "overseas" when he received the child pornography. *See Kolly*, 48 M.J. at 797.

Finally, even if this Court determined the CPPA was not applicable to Appellant's conduct, the Court nevertheless would approve a conviction of an offense under either clause 1 or 2 of Article 134, UCMJ. Our superior Court has approved a conviction under clause 2 of Article 134, UCMJ, where the conviction for a statute incorporated under clause 3 was deemed improvident or improper, yet the record supported a conviction based on an alternative theory. *See United States v. Sapp*, 53 M.J. 90, 92 (2000)(affirming a clause 2, Article 134, UCMJ, conviction, where the appellant's plea under Title 18 U.S.C. § 2252 was deemed improvident); *see also United States v. Augustine*, 53 M.J. 95, 96 (2000). This Court has applied the same rationale to a similar issue. *United States v. Goddard*, 54 M.J. 763, 767 (N.M.Ct.Crim.App.2000)(finding the appellant guilty to a simple disorder under clause 1 of Article 134, UCMJ, where his plea to

maltreatment was deemed improvident), *aff'd*, 55 M.J. 149 (2001). Here, Appellant's conduct was clearly service discrediting, if not prejudicial to good order and discipline. *See, e.g., United States v. Falk*, 50 M.J. 385, 394 (1999)(Sullivan, J., dissenting)("Possession of 126 computer images of child pornography, lasciviously organized in four directories on a personal computer, in government housing on a military post, *is per se service discrediting conduct* in my view.")(emphasis added).

We conclude that the military judge properly denied Appellant's motion to dismiss. Accordingly, we decline to grant relief.

### Providence of Guilty Pleas Based on Unconstitutional Definition of Child Pornography

In his second assignment of error, Appellant asserts that where he pled guilty pursuant to an unconstitutional definition of "child pornography" (Title 18 U.S.C. § 2256(8)(b)) in the CPPA of 1996, Title 18 U.S.C. § 2251, *et seq.*, his pleas to Charge II, Specifications 1 and 2, were improvident in light of the Supreme Court's decision in *Free Speech Coalition*. Appellant avers that this Court should dismiss Charge II, Specifications 1 and 2, and reassess the sentence. We disagree.

■■■ For a military judge to accept an accused's guilty plea, his inquiry must indicate the accused himself believes he is guilty and the factual circumstances as revealed by the accused objectively support his plea. *United States v. Higgins*, 40 M.J. 67, 68 (C.M.A.1994)(citing *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A.1980)); *see also* R.C.M. 910(e). However, a military judge is not required "to embark on a mindless fishing expedition to ferret out or negate all possible defenses or potential inconsistencies." *United States v. Jackson*, 23 M.J. 650, 652 (N.M.C.M.R.1986). A judge's acceptance of a guilty plea will not be set aside absent an abuse of discretion. *See United States v. Eberle*, 44 M.J. 374, 375 (1996). To prevail, Appellant must demonstrate a "substantial basis in law and fact for questioning the guilty plea." *Id.* (citing *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991)). Ap-

pellant must "overcome the generally applied waiver of the factual issue of guilt inherent in voluntary pleas of guilty." *United States v. Dawson*, 50 M.J. 599, 601 (N.M.Ct.Crim.App. 1999).

■ Appellant claims his pleas to Specifications 1 and 2 of Charge II were improvident, in that the specifications incorporated the CPPA, which was partially struck down by the Supreme Court in *Free Speech Coalition*. Appellant's Brief of 27 Jun 2002 at 8. Specifically, Appellant asserts that the military judge's inquiry "left open the possibility that Appellant was pleading guilty under an unconstitutional provision of the CPPA." *Id.* at 11. However, Appellant has not demonstrated the Court's ruling in *Free Speech Coalition* rendered his pleas invalid, or otherwise established grounds for questioning his pleas.

In *Free Speech Coalition*, the Supreme Court addressed a facial challenge to the CPPA.[4] 535 U.S. at 239–40, 122 S.Ct. 1389. Specifically, the Court addressed a challenge to two of the four sections defining "child pornography" under the statute. *Id.* The petitioners in *Free Speech Coalition* challenged language defining child pornography as images in which: (1) the visual depiction is, *or appears to be*, of a minor engaged in sexually explicit conduct; or, (2) the visual depiction is advertised, promoted, presented, described, or distributed in such a manner *that conveys the impression* that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct. 535 U.S. at 246, 122 S.Ct. 1389; *see also* 18 U.S.C. § 2256(8)(B) and (8)(D). Finding these provisions prohibited a "substantial amount of protected speech," the Court deemed the challenged language overbroad

and unconstitutional. 535 U.S. at 241–42, 122 S.Ct. 1389.[5] However, the Court's ruling left intact two definitions of "child pornography" including that provision targeting images where "the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct." 18 U.S.C. § 2256(8)(A).

In Appellant's case, the military judge provided a definition of "child pornography" encompassing all four categories under 18 U.S.C. § 2256. Record at 51. After reading the elements of the specifications at issue, the judge asked Appellant if he had any questions concerning the elements and the definitions, to which Appellant responded, "No, sir." *Id.* at 54, 57. The judge then asked whether those elements and definitions correctly described what Appellant did, to which Appellant replied, "Yes, sir, they do." *Id.* at 57. Later, the judge and Appellant engaged in the following colloquy:

MJ: How did you know that it was child pornography?
ACC: It was obvious, sir.

MJ: I want you to tell me.
ACC: It was obvious that some of the individuals in the pictures were under the age of 18.

MJ: How so?
ACC: Just by judging by common standards that the age of an individual based on the—how they are depicted in the picture, sir. If someone is around the age of 12 or 13, sir, I believe that it is fairly obvious to any reasonable person.

MJ: Was it obvious to you?
ACC: Yes, Sir.

---

4. Traditional rules of constitutional adjudication provide that a person to whom a statute may constitutionally be applied may not challenge the statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the court. *See Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). However, an exception to this rule has been carved out in cases involving the First Amendment where attacks have been permitted on the ground that the statute at issue prohibits a substantial amount of protected expression. *Id.* at 612, 93 S.Ct. 2908.

5. Overbreadth doctrine has been described alternatively as either providing the accused with standing to assert a third-party's interests or requiring that the accused be sanctioned by a constitutionally-valid rule of law. *See* Richard H. Fallon, Jr., *Making Sense of Overbreadth*, 100 Yale L.J. 853, 867 (1991); *see also* Captain John A. Carr, USAF, *Free Speech in the Military Community: Striking a Balance Between Personal Rights and Military Necessity*, 45 A.F. L.Rev. 303, 318 (1998).

MJ: Did you believe that the images that you had and the persons depicted were minors?

ACC: Yes, sir.

MJ: Did the images depict minors engaged in sexually explicit conduct?

ACC: Yes, sir.

MJ: Are you convinced that they were not adults depicted?

ACC: Yes, sir. I am.

. . . .

MJ: That is what I am trying to get—I want you to briefly describe the conduct to me to convince me that this was sexually explicit conduct.

ACC: Genital touching, sexual posing—I believe there was some with actual sexual intercourse or implied sexual intercourse going on. It was a wide variety of different actions.

. . . .

MJ: But you believe that the images were—that you received were of minors though. Is that correct?

ACC: Yes, sir, I do.

*Id.* at 68–70. Appellant further stipulated that the images at issue included depictions of "actual children under the age of 18 years old in lascivious, sexually explicit poses," that constituted child pornography within the meaning of 18 U.S.C. §§ 2252A and 2256. Prosecution Exhibit 1. The Government also offered a representative sample of the images received by Appellant over the internet, confirming that they depicted actual children engaged in sexually explicit conduct. Prosecution Exhibit 2. *See United States v. Johnson,* 42 M.J. 443, 445 (1995)(noting that in determining the providence of pleas, appellate courts must consider the entire record).

Appellant's assertion that the military judge's providence inquiry left open the possibility that Appellant pled guilty under an invalid definition of child pornography is not well-taken. As this Court recently recognized in *United States v. Mazer,* 58 M.J. 691 (N.M.Ct.Crim.App.2003), the Supreme Court's ruling in *Free Speech Coalition* invalidated only two of the four definitions of child pornography under the CPPA. *Id.* at 698–99. The provision under the CPPA prohibiting the receipt of visual depictions, the production of which involves minors engaged in sexually explicit conduct, was untouched by the Court's ruling. Appellant's conduct clearly fell under that category of unprotected "speech." Appellant's effort to differentiate images depicting children engaged in sexually explicit conduct, and images "produced" using children engaged in sexually explicit conduct, is rejected by this Court, as other such efforts have been rejected by our superior Court and other service Courts in the past. *See United States v. James,* 55 M.J. 297, 300–01 (2001)(finding the appellant's pleas provident given his admissions that the images at issue depicted actual children, despite constitutional deficiencies with certain other parts of the CPPA); *see also United States v. Appeldorn,* 57 M.J. 548, 550 (A.F.Ct.Crim.App.2002)(finding an appellant's pleas provident as his in-court admissions established his guilt under sections of the CPPA which were unaffected by the Court's ruling in *Free Speech Coalition*); *United States v. Coleman,* 54 M.J. 869, 872 (Army Ct.Crim.App.2001)(rejecting an appellant's claim that his plea under the Protection of Children Act was improvident, because the appellant never explicitly admitted on the record that the images at issue depicted "real" children), *pet. denied,* 55 M.J. 476 (2001).

It is this Court's opinion that the military judge properly accepted Appellant's guilty plea to Charge II, Specifications 1 and 2, notwithstanding the Supreme Court's ruling in *Free Speech Coalition,* in light of the stipulation of fact and Appellant's unequivocal and incriminating statements offered during the providence inquiry. Accordingly, we decline to grant relief.

## Conclusion

Accordingly, we affirm the findings and the sentence, as approved on review below.

Chief Judge OLIVER and Judge VILLEMEZ concur.

## Appendix A

The text of JER, sect. 2–301 reads, in part:

2–301. Use of Federal Government Resources.

a. Communication Systems. See GSA regulation 41 C.F.R. Subpart 201–21.6 ... on use of Federal Government telephone systems. *Federal Government communication systems and equipment (including Government owned telephones, facsimile machines, electronic mail, internet systems, and commercial systems when use is paid for by the Federal Government) shall be for official use and authorized purposes only.*

(1) Official use includes emergency communications and communications that the DoD Component determines are necessary in the interest of the Federal Government. Official use may include, when approved by theater commanders in the interest of morale and welfare, communications by military members and other DoD employees who are deployed for extended periods away from home on official DoD business.

(2) Authorized purposes include brief communications made by DoD employees while they are traveling on Government business to notify family members of official transportation or schedule changes. They also include personal communications from the DoD employee's usual work place that are most reasonably made while at the work place (such as checking in with spouse or minor children; scheduling doctor and auto or home repair appointments; brief internet searches; e-mailing directions to visiting relatives) when the Agency Designee permits categories of communications, determining that such communications:

(a) Do not adversely affect the performance of official duties by the DoD employee or the DoD employee's organization;

(b) Are of reasonable duration and frequency, and whenever possible, made during the DoD employee's personal time such as after duty hours or lunch periods;

(c) Serve a legitimate public interest (such as keeping DoD employees at their desks rather than requiring the use of commercial systems; educating the DoD employee on the use of the communications system; improving the morale of DoD employees stationed for extended periods away from home; enhancing the professional skills of the DoD employee; job-searching in response to Federal Government downsizing);

(d) Do not put Federal Government communications systems to uses that would reflect adversely on DoD or the DoD Component (such as uses involving pornography; chain letters; unofficial advertising, soliciting or selling except on authorized bulletin boards established for such use; violations of statute or regulation; inappropriately handled classified information; and other uses that are incompatible with public service); and

(e) Do not overburden the communication system (such as may be the case with broadcasts and group mailings), create no significant additional cost to DoD or the DoD Component[.] ...

### Appendix B

The text of Title 18 U.S.C. § 2252A reads, in part:

§ 2252A. Certain activities relating to material constituting or containing child pornography

(a) Any person who—

(1) knowingly mails, or transports or ships in interstate or foreign commerce by any means, including by computer, any child pornography;

(2) knowingly receives or distributes—

(A) any child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer; or

(B) any material that contains child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer;

(3) knowingly reproduces any child pornography for distribution through the mails, or in interstate or foreign commerce by any means, including by computer;

(4) either—

(A) in the special maritime and territorial jurisdiction of the United States, or on any land or building owned by, leased to, or otherwise used by or under the control of the United States Government, or in the Indian country (as defined in section 1151), knowingly sells or possesses with the intent to sell any child pornography; or

(B) knowingly sells or possesses with the intent to sell any child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer; or

(5) either—

(A) in the special maritime and territorial jurisdiction of the United States, or on any land or building owned by, leased to, or otherwise used by or under the control of the United States Government, or in the Indian country (as defined in section 1151), knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography; or

(B) knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, shall be punished as provided in subsection (b).